UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ZAMORA,<br><br>             Plaintiff,<br><br>     v.<br><br>CONNIE GIPSON,<br><br>             Defendant. | Case No. 14-cv-03714-JSW<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

# INTRODUCTION

Petitioner, a prisoner of the State of California, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his criminal conviction and sentence in state court. Respondent filed an answer to the petition, to which Petitioner filed a traverse. For the reasons set forth below, the petition is DENIED.

# BACKGROUND

In 2010, a jury in Santa Cruz County Superior Court convicted Petitioner of attempted murder, shooting at an occupied vehicle, possession of a firearm by a felon, corporal injury to a co-habitant, kidnapping, false imprisonment, and domestic battery. The jury also found allegations of that Petitioner personally used and discharged a firearm and that he inflicted great bodily injury to be true. The trial court found that Petitioner had served three prior prison terms and sentenced him to a term of 38 years to life in state prison.

In 2013, the California Court of Appeal struck the conviction for false imprisonment, ordered the abstract of judgment to reflect the fact that the sentence for shooting at an occupied vehicle had been stayed, and otherwise affirmed the judgment. Petitioner appealed this decision to the California Supreme Court, which denied review on May 1, 2013. Thereafter, Petitioner filed a

petition for a writ of habeas corpus in the California Supreme Court, which was denied on July 16, 2014. On August 15, 2014, he filed the instant petition under 28 U.S.C. § 2254.

The California Court of Appeal summarized the evidence presented at trial as follows:

> Defendant had an acrimonious, violent relationship with Deleyne Padilla that Padilla ended in August 2007. But on September 16, 2007, defendant's mother drove defendant to Padilla's home on Larkin Valley Road in Watsonville so he could attempt reconciliation. She exited the vehicle, entered the home, and explained to Padilla that defendant wished to speak with her. Padilla agreed to speak with defendant and went with the mother to the vehicle. She sat in the front passenger seat and the mother sat in the driver's seat. Defendant was sitting in the back seat. After conversing with Padilla for several minutes, defendant began to argue with Padilla. Padilla exited the vehicle and began walking away. Defendant then got out, pursued Padilla, grabbed Padilla, and threw her onto the back seat of the vehicle. Padilla "flew across and hit the other ... passenger door." Defendant got into the back seat and instructed his mother to drive away. The mother drove away, and the two in the back seat began arguing. After concluding that Padilla had been avoiding him, defendant hit Padilla at least three times in the face while the vehicle was on Airport Road crossing a bridge connecting to Highway 1 toward Monterey. He then bit Padilla on the hand. At some point, the mother pulled over and told defendant to stop hitting Padilla. After defendant agreed, she drove to Mesa Village Park on Green Valley Road where defendant exited the vehicle. She then drove Padilla home. Padilla reported the incident to the police, and the investigating officer observed two red and purple bruised eyes, a swollen cheek and nose, and bite marks on her hand.
>
> The above incident formed the basis for the corporal injury, kidnapping, false imprisonment, and domestic battery convictions. The next described incident formed the basis for the attempted murder, vehicle shooting, and firearm possession convictions.
>
> Defendant was in custody until April 2008. After he was released, Padilla went to see him at his home. They talked about reestablishing their relationship and became intimate. They began seeing each other every day. And they began arguing after Padilla discovered that defendant was seeing a woman named Veronica. During one argument in a restaurant, defendant grabbed Padilla's hair, dragged Padilla around the room, pinned Padilla against a wall, and threw a punch near her face. During another argument at a friend's home, defendant pulled out a revolver. On May 21, the two argued over the telephone. Padilla hung up on defendant and refused

2

>to answer his subsequent calls and text messages. During the late evening of May 21 and early morning of May 22, Padilla drove her car around back roads with her brother-in-law as a passenger. She told him about her abusive situation and stressful condition. As she returned to her home and drove up a hill on her narrow, one-car, dirt driveway, a second car approached going down the driveway toward Padilla's car. The cars stopped at a bumper-to-bumper distance. Defendant exited the second vehicle with a gun in his hand, ran toward the passenger's side of Padilla's vehicle, pointed the gun into the car, and tried to get inside, but the door was locked. He tried the rear passenger door but that was also locked. He angrily commanded that Padilla unlock the door, and Padilla eventually complied. Defendant got in the back seat, pointed the gun at Padilla, and started to argue with her. He demanded her cell phone, and Padilla gave it to him. Defendant read Padilla's call list and broke the cell phone in half. At defendant's command, Padilla backed her car off the road and the second car drove away. Defendant then demanded that Padilla drive him to a friend's home and get rid of her brother-in-law. Padilla instead drove around a neighborhood while defendant argued with her. She stopped at a 7–Eleven store, went inside, and purchased cigarettes for defendant. She then returned to the car and drove to the intersection of Chappel Road and Ross Avenue. During the drive, she refused to take defendant to his friend's home or drop off her brother-in-law. She turned left on Ross. Defendant then told Padilla to stop and drop him off. Padilla stopped the car, and defendant exited from the right passenger rear door. Padilla then "hit the gas." Defendant fired a shot from his revolver that shattered the rear window of Padilla's car, sprayed chunks of glass on Padilla's back, and punctured Padilla's wrist that was holding the steering wheel. Padilla slowed down the car, and she and her brother-in-law slouched down. Defendant then fired another shot that hit the dashboard and shattered glass. Padilla managed to drive out of range. But her pain caused her to turn the driving over to her brother-in-law who drove her to the hospital.

*People v. Zamora*, 2013 WL 681983, 1-2 (Cal. Ct. App. Feb. 26, 2013).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

3

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254 (d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254 (d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions, but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court on habeas review may not issue the writ "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id*. at 409.

Under 28 U.S.C. § 2254 (d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in the light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 332 at 340.

When there is no reasoned opinion from the highest state court to consider AEDPA's standard for relief has been met, the Court looks to the last state court to deny the claims in an explained opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). Here, there is no reasoned state court opinion whatsoever on Petitioner's claims because he did not raise them on direct appeal; instead he raised them only in a habeas petition to the California Supreme Court, which was denied summarily. In such a circumstance, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d

4

1190, 1197-98 (9th Cir. 2006). This independent review is not de novo review; the ultimate question is still whether the state court applied federal law in an objectively reasonable manner. *Kyzar v. Ryan*, 780 F.3d 940, 949 (9th Cir. 2015).

## DISCUSSION

As grounds for federal habeas relief, Petitioner claims: (1) the trial court violated his right to due process by granting the prosecution's motion to join kidnaping and attempted murder charges in a single trial; (2) the trial court violated his right to due process by denying his motion to sever trial on the above charges; (3) the trial court violated his right to due process by failing to instruct the jury on the use of accomplice testimony; (4) the trial court erred in admitting evidence of his prior acts of domestic violence; (5) he received ineffective assistance from trial counsel; (6) he received ineffective assistance from appellate counsel; and (7) the cumulative effective of the foregoing errors rendered the trial fundamentally unfair.

I. <u>Joinder of Charges and Denial of Severance</u>

In his first claim, Petitioner argues that his right to due process was violated when the trial court granted the prosecution's motion to try the charges stemming from the 2007 kidnapping and the 2008 shooting in a single, joint trial. In his second claim, he argues the trial court violated his right to due process when it denied a subsequent defense motion to sever the trial on the two sets of charges.

As an initial matter, Respondent argues incorrectly that under AEDPA habeas relief cannot be granted on these claims because there is no "clearly established" federal law from the United States Supreme Court that improper joinder may violate a defendant's right to due process. Under 28 U.S.C. § 2254(d)(1), federal habeas relief only available on the basis of clearly established Supreme Court precedent. Respondent cites *Collins v. Runnels*, 603 F.3d 1127 (9th Cir. 2010), but that decision does not support Respondent's argument. In *Collins*, the Ninth Circuit found that

5

there was no clearly established Supreme Court precedent that joint trial of two codefendants with antagonistic defenses is unconstitutional. *Id.* at 1133. Here, there was no joinder of two codefendants. Rather, the joinder was of different charges, but all the charges were against a single defendant. *Collins* says nothing about the availability of habeas relief on the basis of an unduly joinder of charges, as Petitioner claims here.

The Ninth Circuit has held that the joinder, or denial of severance, of counts or codefendants, may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). Under *Grisby,* the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id.* While this is not a decision from the United States Supreme Court, Respondent has not provided authority that federal habeas relief may not be granted under Section 2254(d)(1) on a claim that unduly prejudicial joinder of charges against a single defendant rendered the trial fundamentally unfair. In the absence of such authority, the Court assumes that federal habeas relief may be available on such a claim.

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986). This risk is especially great when the prosecutor encourages the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime. *Bean v. Calderon*, 163 F.3d 1073, 1084-85 (9th Cir. 1998). But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross admissible), and the jury is properly instructed so that it may compartmentalize the evidence. *Id.*

6

at 1085-86.

The state courts could reasonably find that there was no risk of undue prejudice in jointly trying the charges arising from the kidnaping and the later shooting. The charges all involved the same victim and could reasonably be found to relate to a similar pattern of domestic violence. (*See* Resp. Exh. 4 at 263-64.) More importantly, as the trial court found, all of the evidence in each case was cross-admissible as to the other under California Evidence Code Section 1109, which permits evidence of a defendant's other acts of domestic violence to prove propensity to commit the charged offense. (*Id.* at 263.) The state court's conclusion that the evidence was admissible under California law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (finding state court's interpretation of state law binds a federal court sitting in habeas corpus). In addition, the joinder did not bootstrap a weak case onto a stronger one because the evidence supporting both sets of charges was strong: both rested on the account of the same victim, the testimony of a corroborating eyewitness (defendant's mother in the kidnapping and the victim's brother in law in the attempted murder), corroborating physical evidence (the victim's injuries in both incidents), and petitioner's substantial history of domestic violence. Furthermore, the evidence of the two incidents was relatively simple and the two incidents were distinct, which under *Bean* generally means there was no risk of undue prejudice from trying them jointly. Finally, the jury did not convict Petitioner on all charges --- he was acquitted of premeditated, willful attempted murder. Joinder generally does not result in prejudice if the jury did not convict on all counts because it presumably was able to compartmentalize the evidence. *See Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000). It can be presumed that the jury in this case was able to compartmentalize the evidence because it did not convict Petitioner on all charges.

Petitioner argues that jointly trying both incidents "forced" him to testify about both sets of charges, whereas in separate trials he would have testified about the 2008 attempted murder but

7

not about the 2007 kidnapping. He does not explain how testifying about the 2007 kidnapping charges hurt his defense or otherwise prejudiced him. Rather, he complains that he was embarrassed to testify in opposition to his mother, who testified for the prosecution. Absent any indication of prejudice, such embarrassment is not on its own sufficient to render the trial fundamentally unfair so as to violate due process.

Petitioner also argues that joinder allowed the admission of prejudicial evidence that he had been on parole and in prison --- during the time between the 2007 kidnapping and the 2008 attempted murder --- which evidence was cited by the prosecutor as showing Petitioner's bad character and lack of credibility. Evidence that Petitioner had a criminal history would have been admitted in separate trials anyway to impeach him and to show that he was a felon in possession of a gun. In addition, a host of other evidence of Petitioner's history of domestic violence, including his criminal history, was also introduced. As a result, evidence of Petitioner's criminal history and other bad acts would have come in in separate trials anyway, and his prison and parole status between the two incidents would not have substantially added to the jury's adverse impression of him.

Lastly, Petitioner argues that the 2008 attempted murder prejudiced the jury against him about the 2007 kidnapping because the jury would have been more likely to acquit him of kidnapping if it had not learned that approximately eight months later he attempted to murder the same victim. This may be true to some degree, but because the evidence of the 2008 attempted murder was cross-admissible as another act of domestic violence under California Evidence Code Section 1109, such evidence would have been admitted in a separate trial on the 2007 kidnapping anyway. As a result, it was not the joinder that led to any prejudice from evidence Petitioner's other acts of domestic violence.

Petitioner has not shown that the joinder and failure to sever trials about the kidnapping

8

and shooting incidents caused sufficient prejudice so as to render his trial fundamentally unfair in violation of his right to due process. Accordingly, the state court's denial of these claims was neither contrary to nor an unreasonable application of federal law.

2.  Accomplice Testimony Instruction

Petitioner claims that the trial court violated his right to a fair trial by failing to sua sponte instruct the jury to view with caution any testimony by an accomplice that incriminates the defendant. Petitioner argues that under state law, his mother was an accomplice to the kidnapping, and state law requires the trial court to give such an instruction whenever an accomplice testifies for the prosecution. (*See* Pet. at 31 (citing *People v. Guiuan*, 18 Cal.4th 558, 564 (1998); Cal. Pen. Code § 1111).) Therefore, Petitioner asserts, the trial court was required to give the accomplice testimony instruction at his trial.

Petitioner only cites state law, and appears to argue that it was state law that required the trial court to give the instruction. Federal habeas relief is not available based upon the violation of state law. *Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011). Petitioner argues, however, that the state law he cites gives him a liberty interest protected by the federal constitutional right to due process in the trial court instructing the jury to view accomplice testimony with caution. Federal habeas relief is only available based upon clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner cites no federal law, let alone any Supreme Court authority, that the federal constitutional right to due process protects the liberty interest he asserts or that the fair trial guaranteed by due process requires a jury instruction on accomplice testimony.

Due process does require that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to

9

adequate instructions on the defense theory of the case. *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000). Petitioner's defense at trial was not that his mother's testimony was false because she was trying to shift blame to him or obtain immunity from prosecution, which are the reasons that juries are instructed to view accomplice testimony skeptically. *See People v. Tobias*, 25 Cal.4th 327, 331 (2001). To the contrary, Petitioner's mother told the police that she did not want her testimony to hurt Petitioner.

Petitioner has not shown that he has a federal constitutional right to the accomplice testimony instruction, that he has a protected liberty interest in such an instruction, or that his constitutional right to present his defense theory required the instruction. Accordingly, the state courts' denial of this claim was neither contrary to nor an unreasonable application of federal law.

       3.       <u>Admission of Evidence of Other Acts of Domestic Violence</u>

Petitioner claims that the trial court violated his right to due process by admitting evidence of Petitioner's other acts of domestic violence under California Evidence Code Section 1109. Specifically, the trial court admitted evidence that Petitioner was convicted of domestic battery against a former girlfriend Lozano Pinuelas in 2002, had committed several acts of domestic violence against another former girlfriend, Delilah Yasin, in 2003, and had previously committed domestic violence against Padilla (the victim in this case) in several incidents between 2004 and 2008. Petitioner argues that this evidence "arose the passions and prejudices of the jury" and thereby violated California Evidence Code Section 352 (requiring balancing of probative value and prejudicial effect of otherwise admissible evidence) and Petitioner's federal constitutional right to due process..

The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of

10

irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)). Because the United States Supreme Court has not established that the admission of overly prejudicial evidence violates due process, under *Holley*, Petitioner's claim is barred from federal habeas review. *See, e,g,, Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015) (because there is no Supreme Court case establishing the fundamental unfairness of admitting multiple hearsay testimony, *Holley* bars any such claim on federal habeas review).[1] Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### 4. Ineffective Assistance of Counsel

Petitioner claims that his first attorney, Aimee Buentello, provided ineffective assistance of counsel by failing to file an opposition or argue against the prosecutor's motion to consolidate the charges into a single trial. Ms. Buentello was appointed to represent Petitioner, and she was his counsel through the preliminary hearing and arraignment. After the consolidation motion was granted, Petitioner filed a motion to substitute her with a new attorney because she failed to oppose the motion. Petitioner's motion for a new appointed counsel was denied. Petitioner then retained a new attorney, Douglas Fox, who represented him throughout the remainder of the trial court proceedings.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must show both that counsel's performance was deficient and that the deficient

---

[1] It is noted that even under circuit precedent, Petitioner's claim would fail because "[o]nly if there are no permissible inferences the jury may draw from the evidence can its admission violate due process," *see Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991), and the introduction of evidence of prior crimes to show a propensity to commit the charged offense is a permissible inference, *see United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (permitting evidence of prior sexual offenses to show propensity under the Federal Rules of Evidence).

11

performance prejudiced Petitioner's defense. *Id.* at 688. To prove deficient performance, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* To prove counsel's performance was prejudicial, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See id.* at 697.

To begin with, the record appears to indicate that trial counsel did in fact file an opposition to the consolidation motion. (*See* Resp. Exh. 1 at 275; Exh. 4 at 263.) Even if she did not file the opposition, however, this would not have been deficient or prejudicial under *Strickland*. Trial counsel is not ineffective for failing to raise a meritless motion, *see Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), and similarly she cannot be faulted for failing to file a meritless opposition. And to show prejudice from the failure to file a motion, a petitioner must show both the likelihood of success on the motion and the likelihood of a different outcome in the trial if the motion had been granted. *See Styers v. Schriro*, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008). The Court has explained above why consolidation of the charges was not erroneous; for those same reasons, opposition to the consolidation motion would have been meritless. It is also clear that the trial court would have rejected any opposition to consolidation --- the trial court revisited the question of consolidation when Petitioner filed a motion to sever the charges, and on that occasion it rejected Petitioner's arguments for why the charges should not be tried together. As a result, any failure by Ms. Buentello to file an opposition was neither deficient nor prejudicial.

Accordingly, the state courts' denial of Petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of federal law, and federal habeas

12

relief is not warranted on this claim.

### 5. Ineffective Assistance of Appellate Counsel

Petitioner claims that he received ineffective assistance from counsel on direct appeal. Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000). First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. *Id.* Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Id.* at 285–86. It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason – because he declined to raise a weak issue. *Id.*

Petitioner claims that appellate counsel was ineffective in failing to obtain a transcript of the court proceedings and arguments made during the motion to consolidate. A transcript of the court proceedings regarding the motion to sever --- which covered the same ground as the motion to consolidate -- was available to Petitioner. It is clear from the record that the evidence was cross-admissible, the victim was the same, the case was equally strong on both sets of charges, and the evidence of the two incidents was relatively easy to compartmentalize. These factors support consolidation, and Petitioner has not shown why the transcripts of the consolidation motion proceedings would show that the trial court's consolidation decision was wrong or would

13

otherwise have helped his appeal. As a result, there is no indication that appellate counsel's failure to procure the transcripts about the consolidation motion was either deficient or prejudicial.

Petitioner also claims that appellate counsel was ineffective in failing to raise on appeal the constitutional violations that are claimed in the instant petition. For the reasons explained in this order, those claims are without merit and do not show the violation of Petitioner's constitutional rights. As a result, appellate counsel's failure to raise them was neither deficient nor prejudicial.

Accordingly, the state courts' rejection of Petitioner's claim that appellate counsel was ineffective was neither contrary to nor an unreasonable application of federal law.

### 6. Cumulative Effect

Petitioner argues that even if no single one of the above-described errors was sufficiently prejudicial to afford him habeas relief, the cumulative effect of the errors were so prejudicial that his trial was rendered fundamentally unfair in violation of his constitutional right to due process. For the reasons discussed above, however, none of the claims resulted in error. As a result, there are no errors or prejudice to cumulate, let alone to have rendered the trial fundamentally unfair. Petitioner is not entitled to habeas relief on this claim.

//
//

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. A certificate of appealability will not issue. See 28 U.S.C. § 2253 (c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of the Respondent and close the file.

**IT IS SO ORDERED.**

Dated: July 6, 2016

_____
JEFFREY S. WHITE
United States District Judge

15